*ANDERSON, J.,
delivered the opinion of the court.
The first question we have to consider, is as to the jurisdiction of the circuit court of Frederick county to maintain this suit. The defendant resided in the county of Frederick. He qualified there as a guardian of the female plaintiff, and has in his possession at least a part of the fund arising from the sale of her land under a decree of the circuit court of Hampshire county, in West Virginia, and is entitled under said decree, to receive the whole of it. The part he received he has in the county where he resides, and seeks to apply it in a way, which the plaintiffs contend, it is not lawful for him to do, and which is prejudicial to their rights. He is a fiduciary which the plaintiffs allege has funds in this State, and is liable to be sued here. If he were sued in West Virginia upon his bond given there, a judgment obtained against him there would be of no avail against him here. The court is of opinion upon the authority of Tunstall & al. v. Pollard’s adm’r, 11 Heigh 1, and the subsequent decisions of this court, that the circuit court of Frederick county had jurisdiction of this suit.
The court is further of opinion that the circuit court erred in allowing disbursements to the defendant, the appellee here, out of the ward’s real estate, beyond the annual income of the same. By section 8, of chapter 123, of the Code of 1873, page 929. it is enacted that no disbursement shall be allowed to any guardian, when the deed or will under which the estate is derived does does not authorize it, beyond the annual income of the ward’s estate, except in the cases mentioned; and in such cases, only the personal estate of the ward may be sold to satisfy expenditures over and above, the income of his estate. But neither the *ward personally, nor his real estate shall be liable for such disbursements. (Ibid. § 9.)
By section 13, of the same chapter of the Code, the circuit, county and corporation courts in chancery, may make any order for the custody and tuition of an infant, and the management and preservation of his estate; and when it shall be made to appear to the satisfaction of a circuit court of chancery that the proper maintenance and education/or other interests of an infant require, that the proceeds of his real estate, beyond the annual income thereof, should be ap *564 plied to the use of said infant, it shall be lawful for such court to make such orders from time to time as may be necessary to secure such application; and to the extent that such proceeds may be so applied, they shall be deemed and taken to be personal tate, but no further. This provision was not engrafted into our laws until it appeared in the Session Acts of 1872-3, chapter 191. And previous thereto no sale of an infant's real estate was ever made, except under the particular provisions of the statutes, Rev. Code ch. 96. 20, and ch. 108, 16 and 23, which do not authorize the sale of an fant's real estate, or any part of it, for his maintenance and education. Judge er said, in Pierce's adm'r v. Trigg's adm'r, 10 Leigh 419, "It is notorious, that until the passing of these statutes, no sale of an fant's real estate was ever made except der the authority of a private act of assembly. And the proceeds of a sale made under those acts, if the infant died under one years of age, was considered as real tate and passed to such persons as would have been entitled to the estate if it had not been sold. (R. C. ch. 108, 21.) The law is the same now. Code of 1873. ch. 124, 12. It will be observed that by the act of [[Y;659;4;672;25]872-3,. supra,
the application of the proceeds of the infant's real estate, beyond the annual income, can be applied to *his mainte- nance and education, only upon the or- der of the circuit court, when it shall be made to appear to the satisfaction of the court, that the proper maiutenance, education, or other interests of the infant, require it. There is uo provision authorizing the court to sanction any sale which had been pre- viously made of the infant's real estate which, if it had not been so made, the court, at the time of allowing such disbursements. would have ordered, as is made by the ninth section of the same chapter, in relation to the infant's personal estate. The sale or ap- plication of the infant's real estate to his maintenance and education, is authorized by said act only on `the previous orders of the circuit court in chancery, made from time to time, as the exigencies of the case may require, There is nothing in said act, which indicates an intention of the legisla- ture that is should be retroactive in its operation. In accordance with the settled doctrines on this subject, by repeated deci- sions of this court, the said act can be con- strned to be only prospective in its opera- tion. And in this case, a large proportion of the expenditures made by the guardian, were made prior to the passage of said act of assembly, when there was no law in ex- istence. which authorized under any circum- stances or conditions the subjection by the courts of any part of the corpus of the in- fant's real estate to their payment. The personal property of the ward in the hands of the
The personal property of the ward in theguardian, consisted chiefly in slaves and some debts due his ward. If he had filed a bill in 1862, or 1863, or even at a later period, in the circuit court of Fred- erick county, for authority to sell the slaves. when he had have better been made to appear to the satisfaction of the court that it would be conducive to the interest of his ward to sell her slaves, than to sell her lands, whether for her proper ’¡“maintenance and edu-_ cation, or for a safer and more profitable investment. He made sale of a woman and her children, and loaned a part of the proceeds of the sale on good security. Instead of lending the balance, or applying a portion of it to the payment of his ward’s board and other expenses, he retained it in his own hands until it became worthless.
_ He exhibited his bill as guardian in the circuit court of Hampshire- county, (where he had also qualified as guardian, the date does not appear,) for the sale of his ward’s land in that county, and a lot in the town of Romney, except the tracts constituting the Jerry Mountain farm, the rents of which he put at ninety dollars in gold. The other lands consisting of numerous tracts which he asked might be sold, he described as wild mountain lands which were unproductive, and not likely to improve in value, the sale of which he represented was necessary for the support and education of his ward. And he prayed that after paying the debts of decedent’s estate, if there were any, of which he had no _ knowledge, that the balance might be paid over to him for the support, maintenance, and education of his ward.
Seeming to abandon the object and design of this bill, at May rules, 1871, he filed as guardian, an amended bill, representing that it would promote the interests of his ward, and all other persons interested in the estate, to sell the Jerry Mountain farm as well as all the other lands of his ward. That said farm was deteriorating in value; and tenants could not be procured who would give it the care and attention which it should have in order to keep it in a condition to be profitably rented; and to keep it rented until his ward attains her majority, he believed it would have lost greatly, if not half, its value. He makes no allegation, or intimation in his amended bill, that the sale of it, *or of any of the lands, is necessary for the maintenance and education of
his ward, but evidently seeks the sale of all, with a view to a better investment for his ward. And proceeding under a sumilar act of West Virginia to that of ch. 124, of our Code, he prays that Mary Streit, his ward, and all those who would be her heirs or distributees if she were dead, may be made parties; that all the land of which P. B. Streit. the father of his ward, died seized, both the lands sought to be sold by the original bill, and that more particularly named in the amended bill, be sold, and the proceeds invested for the benefit of his said ward.
Upon the hearing, the court was of opinion, as expressed in its decree, “that it is for the interest of all persons interested therein, that the lands in the bill and amended bill named should be all sold, and the proceeds of sale otherwise invested,_ and that the rights of no persons will be violated thereby;” and decreed, that C. S. White, who was appointed
*565 a commissioner for that purpose, should make sale of all the lands and the lot, in both bills mentioned, except such as had been previously sold. On the 9th of August, 1872, the said court, by another decree, confirmed the sale reported by the commissioner of the Jerry Mountain farm, and directed him to loan out the money — ($1,000)—then in his hands, after paying costs, taking deeds of trust from the person or persons to whom it may be loaned, on unencumbered real estate, (which shall be worth at least double the amount intended to be secured), to secure such loan or loans, and to collect annually the interest, “and pay the same over to said guardian for the support and education of his ward.”
And by a subsequent decree, C. S. White, special receiver, was required to collect as soon as possible, the fund in this suit, and to pay the same over, as well as any of said fund now in his hands, to William H. *Streit as fast as collected. But before said Streit guardian shall receive any part of said fund, except the interest already directed to be paid to him, he shall execute and file with the clerk of this court, bond in the penalty of $6,00(3, with two good securities who shall reside in Hampshire county, to be approved by said clerk, conditioned for the faithful application of so much of said fund as may come into his hands, for the proper management and preservation of any property or securities in which the same may be invested, and for the protection of the rights of all persons interested therein, whether such rights be vested or contingent.
This condition is in the very terms of the eighth section of chapter 124 of our Code. I have recited these proceedings more in detail, as they show with what care and vigilance the court of Hampshire was disposed to guard and protect the rights of the infant. And they show that the suit by the guardian in Hampshire, as amended, and the sale of the real estate of his ward, under the decrees of the court in that suit, were not for the maintenance and education of the ward, or to be applied to the disbursements previously made by the guardian, which the court had no power to do, but for a change of investment, for which purpose the proceeds of the sale were directed to be paid over to the guardian. And the said fund came into his hands as real estate. The conversion of an infant’s real estate into money does not change its character as realty, and the proceeds of the sale retains the impress of real estate until the infant attains the age of twenty-one years. Such was the character of the fund which came into the hands of this guardian, and it was not applicable to disbursements for the maintenance and education of his ward beyond the annual income therefrom. But the interest on said fund, not only on the •’’part he received, but also upon that part of it, if any. which has not been paid over to him— upon the whole fund which was derived from the sale of the real estate, is applicable to his disbursements, and ought to be so applied, as well as any personal estate, choses in action or possession, which have not been heretofore appropriated.
The court is of opinion for the foregoing reasons, that the court below erred in allowing the disbursements of the guardian out of the ward’s land fund, beyond the interest or annual income thereon. And that for this cause the decree must be reversed.
This conclusion may operate a hardship upon the guardian, who is highly commended by the court below, and who we doubt not, is worthy of the high estimation in wh;ch he seems to be held. Upon a restatement of the account upon the principles herein declared, it may be found that his loss will not be much. But be that as it may, it is our province to declare the law as we find it, not to legislate. The court cannot depart from a general rule of law, in order to avoid individual hardship in a particular case. The laws we have been considering were made for the protection of infants, and we cannot allow a departure from them, or their infringement, to avoid individual hardship. As was said by Bronson, chief justice, “Courts of justice should take care that they are not misled by the hardship of a particular case * * * to make a precedent which would run counter to well established principles.” Lord Tenderden is reported to have said, “hard cases make bad law.”
_ The court deems it unnecessary to consider the appellant’s other exceptions to the commissioner’s report, or assignments of error, as it does not appear from the record that the guardian is chargeable with more of the personal estate, than is necessary for his indemnity.
*The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court of Frederick county had jurisdiction of the matters in controversy in this suit. The court is further of opinion that the real estate of the infant was not liable for the disbursements of her guardian beyond the rents and profits thereof, and when sold that the principal of the proceeds was not liable therefor, but only the interest upon the principal sum, and that the court below erred in allowing the guardian, in the settlement of his accounts, to apply any part of the principal of said proceeds to his disbursements, and that for this cause the decree aforesaid must be reversed. The court is also of opinion that the interest upon the proceeds of the sale of real estate of the said infant and the whole of her personal estate are applicable to the disbursements made by the guardian, and it appearing from the record that the whole of the personal estate, together with the rents and profits and the interest upon the proceeds of the sale of real estate, are not more than sufficient to indemnifv the guardian for his disbursements, it is not deemed necessary to pass on the other exceptions to the account, or assignment of error. It is therefore *566 decreed and ordered that the said decree of the said circuit court be reversed and annulled, and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And thecauseis remanded to the circuit court of Frederick county for further proceedings to be had therein in conformity with this decree.
Decree Reversed.